

Case 1:03-cv-12442-WGY     Document 8-3     Filed 01/26/2004     Page 1 of 15

DR

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

This Mutual Release and Settlement Agreement (the "Agreement") is entered into as of this 14/17 day of February, 1995, by and among USTrust (formerly known as United States Trust Company and referred to herein as "Lender") and David R. Rostoff (the "Borrower").

### R E C I T A L S

A.  Reference is hereby made to two (2) Promissory Notes each dated May 24, 1989, by Borrower to Lender each in the original principal amount of $145,613.00 (the "Notes"). The Notes are secured by, among other things:

> (i) a certain Security Agreement and Assignment of Partnership Interest dated May 24, 1989 from Borrower to Lender (the "L.P. Assignment") covering Borrower's 6.4% limited partnership interest in a certain Massachusetts limited partnership known as Tanglewood Limited Partnership ("the Partnership") as affected by a certain Payment Agreement dated September, 1990 by and among Borrower, Lender, James I. Harris and Patriot Indiana Corporation (the "Agreement");

> (ii) a certain Limited Guaranty dated May 24, 1989 by James I. Harris to Lender guaranteeing the obligations of Borrower to Bank (the "Guaranty").

The Notes, the L.P. Assignment, the Agreement, the Guaranty and any and all documents executed in connection therewith are sometimes collectively referred to herein as the "Loan Documents". The obligations evidenced by the Loan Documents are sometimes collectively referred to herein as the "Loan". The limited partnership shares of the Partnership covered by the L.P. Assignment are sometimes referred to herein as the "L.P. Share" or "L.P. Shares". The assets of Borrower covered by the L.P. Assignment (including the L.P. Shares) are sometimes collectively referred to herein as the "Collateral".

B.  As more fully acknowledged herein, Borrower is in default under the Loan Documents for failure to repay the Loan to Lender when due. The Borrower hereby acknowledges and represents to Lender, upon which representations Lender has relied in entering into and performing this Agreement, that all amounts due and owing under the Loan, including all unpaid accrued interest together with all the costs, charges and fees incurred by Lender, including, without limitation, reasonable attorneys' fees, are currently owed by Borrower without counterclaim, defense or offset. The amount due under the Notes as of February 10, 1995 is $247,388.66 consisting of principal in the amount of $236,599.28 and unpaid accrued interest in the amount of



$10,789.38 in addition to late fees, interest at the default rate, appraisal fees and attorneys' fees and expenses.

C.  On January 19, 1995, two Executions of Judgment in favor of Lender were entered against Borrower in the sum of $272,048.80 (the "Execution") in Suffolk Superior Court Civil Action No. 94-1237.

D.  In order to resolve Borrower's payment obligations to Lender under the Loan and obtain the discharge and release of all the Loan Documents, including the release of the L.P. Shares and other Collateral, if any, from Lender, Borrower has offered to pay to Lender the sum of $152,652.00 together with a deficiency note for a portion of the remaining balance of the Loan in exchange for the release of Borrower under the Loan Documents.

E.  Lender has agreed to accept the offer by Borrower of the payment of $152,652.00 provided (i) said funds are delivered on or before February 28, 1995 (the "Closing Date") and (ii) Borrower also executes and delivers to Lender a deficiency note in the amount of $47,348.00 upon the same terms and in the form attached hereto as <u>Exhibit A</u> (the "Deficiency Note"). Upon receipt of such funds and the Deficiency Note, Lender has agreed to forgive the remaining debt under the Loan, release the Borrower from any and all personal liability under the Loan Documents, discharge and release all of the necessary Loan Documents and return the Execution marked paid in full to the court once the Deficiency Note has been paid in full in accordance with its terms.

G.  Lender and Borrower have each agreed to grant the releases described herein.

NOW, THEREFORE, in consideration of the foregoing and of the mutual releases set forth below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  <u>Release by Lender</u>. Effective only upon the Closing Date and upon Lender's receipt of the Settlement Proceeds (as defined below) and the Deficiency Note, Lender hereby releases, remises, acquits and forever discharges Borrower from any and all debts, demands, actions, causes of action, suits, dues, sum and sums of money, account reckonings, covenants, contracts, controversies, agreements, promises, doings, omissions, variances, damages, extents, executions and liabilities and any and other claims of every kind, nature and description whatsoever both in law or in equity, which Lender now has or ever had from the beginning of the world to the date of this Agreement against Borrower or any one or more of them and their heirs, executors, administrators, successors or assigns under and on account of the Loan Documents and the Execution. The release of Borrower by

2



Lender set forth above is hereby conditioned upon and shall only be effective provided:

    a)    Borrower remits to Lender the amount of $152,652.00 (the "Settlement Proceeds") on or before the Closing Date;

    b)    Borrower executes and delivers the Deficiency Note to Lender on or before the Closing Date; and

    c)    Borrower has executed and delivered this Agreement to Lender.

Upon receipt by Lender of the Settlement Proceeds and the Deficiency Note, Lender shall (i) execute and deliver to Borrower discharges and releases of all necessary Loan Documents; and (ii) return to Borrower any and all original Loan Documents to the extent that such originals are in Lender's possession after diligent search has been made by Lender. If Borrower fails to comply with the conditions set forth herein including, without limitation, the delivery of the Settlement Proceeds and executed Deficiency Note by the Closing Date then (i) this Agreement shall be deemed by Lender and shall become null and void; (ii) Borrower shall remain fully liable under the Loan Documents; and (iii) Lender shall be entitled to pursue any or all of its rights and remedies under the Loan Documents against the Borrower and the Collateral. Upon payment in full of the Deficiency Note in accordance with its terms, Lender shall return the Execution to the court marked "satisfied in full".

    2.    <u>Release by Borrower</u>. Effective on this date and in consideration of Lender entering into this Agreement, Borrower does hereby jointly and severally release, remise, acquit and forever discharge Lender and each of its respective subsidiaries, affiliates, officers, directors, agents, employees, servants, attorneys and representatives, as well as the heirs, personal representatives, successors and assigns of any and all of them from any and all debts, demands, actions, causes of action, suits, dues, sum and sums of money, account reckonings, covenants, contracts, controversies, agreements, promises, doings, omissions, variances, damages, extents, executions and liabilities and any and other claims of every kind, nature and description whatsoever both in law and in equity, including, without limitation, such claims and defenses as fraud, mistake, duress, usury and any other claim of so-called "lender liability" which Borrower now has or ever had from the beginning of the world to the date of this Agreement under and on account of the Loan Documents.

    3.    <u>No Other Release</u>. Notwithstanding anything contained in this Agreement to the contrary, Borrower shall not be deemed to be released in any way from his continuing obligations under

3

any other loan, debt or account owed to Lender including, without limitation, the Deficiency Note. This Agreement is merely intended to protect the parties so released from any claims, demands or causes of action of any kind as more fully set forth above, arising out of or relating to the Loan Documents and Lender shall retain all other rights and remedies against Borrower for any debt or obligations owing to Lender other than under the Loan Documents.

4. <u>Circumstances Where Release of Borrower Shall Be Rescinded</u>.

a) Notwithstanding anything in this Agreement to the contrary, if, and to the extent that, any transfer of assets agreed upon herein between the Borrower and Lender including, without limitation, the payment of the Settlement Proceeds to Lender, is determined to be a voidable preferential transfer, a fraudulent transfer, or a fraudulent conveyance under either state or federal law or is otherwise set aside or voided by any court of competent jurisdiction, and said transfer of assets to Lender is undone or unwound and the assets ordered to be returned to the applicable estate for any reason whatsoever, including, without limitation, the filing of a petition by Borrower in bankruptcy, reorganization, or for any arrangement pursuant to any present or future federal or state bankruptcy laws or similar laws, then, notwithstanding the release of Borrower of his liabilities under the Loan Documents as set forth above, the release of Borrower shall be rescinded and deemed ineffective and the liabilities of Borrower shall automatically be revived and reinstated to the extent of the amount of debt due and owing under the Loan Documents as of the date the transfer of assets is set aside. The liabilities of Borrower under the Loan Documents shall be reduced only by those proceeds paid to Lender by Borrower, but only to the extent that Lender is entitled to retain such proceeds including any and all interest on such proceeds.

b) Notwithstanding anything in this Agreement to the contrary, the release of Borrower hereunder shall be rescinded and deemed null and void in the event of a default by Borrower under the Deficiency Note.

c) If the release of Borrower shall be rescinded and deemed ineffective and the liability of Borrower revived for any of the reasons as set forth above, then (i) Lender shall be entitled to exercise any remedies available under the Loan Documents, applicable law or otherwise, against the Borrower; (ii) the liabilities and obligations of the Borrower shall be immediately reinstated (i.e., any amounts which were forgiven under the Loan Documents shall become immediately due and payable); and (iii) the Borrower shall be liable for the full amount of all sums due under the Loan Documents including any and all accrued interest



from the date of this Agreement to the date said transfer of assets is set aside. Notwithstanding any of the foregoing to the contrary, there shall be no rescission of the release hereunder of any security interest held by Lender due solely to a default under the Deficiency Note by Borrower after the date hereof.

5. <u>Waiver by Lender</u>. Lender hereby acknowledges that the L.P. Shares are being transferred by Borrower to Karen Harris or Harriett Rostoff (or a corporation substantially controlled by either or both of them) in connection with the refinance of certain Indiana property owned by the Partnership. Lender hereby waives any and all claims that such transfer may constitute a fraudulent conveyance or transfer under applicable federal or state laws provided, however, that this waiver by Lender shall not be considered binding upon Lender if the release of Borrower is deemed ineffective and rescinded pursuant to Section 4(a) above.

6. <u>Understanding of Terms</u>. Each party has had the opportunity to discuss the terms of this Agreement with his counsel and hereby confirms that he (a) understands the implications of the provisions hereof, (b) is receiving satisfactory consideration for the releases set forth herein, and (c) is acting of his own free will and without duress.

7. <u>Governing Law; Interpretation and Binding Effect</u>. This Agreement shall be governed by and construed in accordance with the laws of The Commonwealth of Massachusetts and shall take effect as a sealed instrument and shall be binding upon and inure to the benefit of the respective heirs, successors, successors in interest, executors, administrators, representatives, assigns, devisees and legatees of the parties hereto. If any provision hereof is in conflict with any statute or rule of law of The Commonwealth of Massachusetts or any statute or rule of law of any other applicable jurisdiction or is otherwise unenforceable, such provision shall be deemed null and void only to the extent of such conflict or unenforceablity and shall be deemed separate from and shall not invalidate any other provision of this Agreement.

8. <u>Entire Agreement</u>. The whole of this Agreement is set forth herein, and there is no verbal or other written agreement, and no understanding or custom affecting the terms hereof. Neither this Agreement nor any of the provisions hereof can be changed, waived, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed under seal as of the date first above written.

Witness: *[signature]*

*[signature]*

USTRUST

By: *[signature]*
Robert T. MacAlear
Vice Chairman

*[signature]*
David R. Rostoff

```
f:\users\brianp\ust.tan\doc\drostoff.agr
2052.16
```

6

EXHIBIT A

**PROMISSORY NOTE**

Date:              February ____, 1995

Lender:            USTrust
                   30-40 Court Street
                   Boston, MA   02108

Borrower:          David R. Rostoff
                   1500 South Ocean Boulevard
                   Boca Raton, Florida

Loan Amount:       $47,348.00

Due Date:          February ____, 1997

FOR VALUE RECEIVED, the undersigned Borrower hereby unconditionally promises to pay to Lender or order on or before the Due Date the principal sum of the Loan Amount with interest thereon until the entire principal balance has been repaid in accordance with the terms of this Note.

1. Interest Rate

    Interest shall accrue at an annual interest rate equal to Lender's Prime Rate, as announced by Lender from time to time, plus one and one-half percent (1 1/2%) per annum (the "Interest Rate"). The Interest Rate shall increase or decrease at the same time and in the same amount as Lender's Prime Rate. Interest shall be computed on the basis of a 360 day year; that is, interest for each day shall be calculated by multiplying the principal outstanding by the annual interest rate then payable divided by 360.

2. Payments

    Payments of interest shall be due monthly in arrears on the first day of each calendar month commencing April 1, 1996. Interest shall be paid through the day on which payment is received by Lender. Any payment due on a Saturday, Sunday, or legal holiday shall be paid on the next business day and shall include interest through that day. Although no interest payments shall be made until April 1, 1996 hereunder, interest shall accrue commencing as of the date hereof. On April 1, 1996, Borrower shall make a lump sum payment of all accrued interest through April 1, 1996. There shall be no monthly payments of principal required hereunder. On the Due Date, the entire outstanding principal balance of this Note, together with all

accrued and unpaid interest and other charges shall be due and payable.

All payments shall be made in immediately available funds in lawful money of the United States of America at the address of Lender stated above.

3. <u>Prepayment</u>

This Note may be prepaid in part in multiples of one thousand dollars on any interest payment date, or in whole, on any business day, without premium or penalty.

4. <u>Interest and Charges on Overdue Payments</u>

To the extent permitted by law, Borrower agrees that all payments of principal and interest and other charges not received within ten (10) days after the date on which the same is due shall bear additional interest at the Interest Rate plus an additional four percent (4%) per annum from the due date until payment is received. Such additional interest shall be paid on demand. In addition to additional interest and other charges which may be payable because of Borrower's failure to pay principal or interest when due, Borrower agrees to pay on demand a late charge of five percent (5%) of any amount not paid within ten (10) days of the date when due. Notwithstanding anything to the contrary herein, if at any time the effect of any provision of this Note would be to cause an amount payable to be usurious under law applicable to this Note, Borrower shall nevertheless pay the full amount payable and Lender shall apply the amount which would be usurious to principal.

5. <u>Application of Payments</u>

Payments shall be applied first to costs of collection, then to late charges, then to other amounts which may be due hereunder other than principal or interest, then to interest, and then to principal.

6. <u>Rights of Set-Off</u>

No payment of principal or interest shall be subject to setoff, reduction, or recoupment by Borrower for any cause whatsoever relating to or based on dealings between Borrower and Lender. Any deposits or other sums credited by or due from Lender to Borrower or any endorser or guarantor of this Note, and any securities or other property thereof in the possession of Lender, may be held by Lender as collateral for the payment of this Note and the other obligations of Borrower or any endorser or guarantor relating to this Note, either direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising. After the occurrence of an Event of Default,

Lender may apply or set off such deposits, other sums, securities and other property against such obligations.

7.  <u>Events of Default</u>

At the option of Lender, this Note shall become immediately due and payable without notice or demand upon the occurrence of any of the following events which shall be referred to herein as "Events of Default":

   (a)  failure to pay in full when due any principal, interest, or other amount due under this Note;

   (b)  any statement, representation or warranty made in connection with this Note, or in any supporting financial statement of Borrower shall be found to have been false in any material respect when given;

   (c)  the making of an assignment for the benefit of creditors, insolvency, appointment of a receiver of any part of the property of, or the filing of a petition in bankruptcy, or the commencement of any proceedings under any bankruptcy or insolvency law or any law relating to the relief of debtors, readjustment of indebtedness, reorganization, composition or extension by, or if not dismissed within forty-five (45) days, against Borrower;

   (d)  the service upon Lender of a writ or order in which Lender is named as trustee of Borrower or of any of Borrower's property; and

   (e)  The rescission by Lender of the release of Borrower pursuant to a certain Mutual Release and Settlement Agreement of even date herewith by and between Lender and Borrower.

8.  <u>Payment of Holder's Costs</u>

Borrower shall pay all costs of the holder hereof, including, without limitation, court costs and reasonable attorneys' fees and costs, incurred in connection with: (i) collecting all sums due under this Note, (ii) defending or protecting the security for this Note, and (iii) defending any action against the holder relating to this Note.

9.  <u>Unconditional Liability</u>

Borrower agrees that the liability of Borrower shall be unconditional without regard to the liability of any other party and shall not be in any manner affected by an indulgence, extension of time, renewal, waiver, or modification granted by

9

Lender with respect to the payment or other provisions of this Note.

10. <u>Waivers</u>

Borrower hereby waives: (i) presentment, demand, notice of nonpayment, protest and all notices or conditions precedent in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note; (ii) trial by jury; and (iii) prior to the complete repayment hereof, all rights to the benefit of any security for this Note and to direct the application of the proceeds of any security. The delay or failure of Lender to exercise any right on one or more occasions shall not be a bar to or waiver of the right to exercise the same on any subsequent occasion.

11. <u>Captions</u>

Captions are used for convenience of reference only and are not to be construed as part of the terms of this Note.

12. <u>Severability</u>

The invalidity of any provision of this Note shall in no way affect the validity of any other provision.

13. <u>Successors and Assigns</u>

This Note is binding upon and shall inure to the benefit of the parties hereto and their heirs, successors, personal representatives, and assigns.

14. <u>Notices</u>

All notices given hereunder shall be in writing and shall be deemed received at the earlier of when delivered in hand or seventy-two (72) hours after the same have been deposited in the United States mails, postage prepaid, certified or registered mail, return receipt requested, addressed to the Borrower and Lender at their addresses appearing on the first page hereof, or to such other address or addresses at the parties may from time to time specify by notice so given.

15. <u>Governing Law</u>

This Note shall be interpreted in accordance with and governed by the law of The Commonwealth of Massachusetts.

16. <u>Jurisdiction</u>

Borrower submits to personal jurisdiction in The Commonwealth of Massachusetts and waives any and all personal

10

rights to object to such jurisdiction. Borrower agrees service of process may be made and personal jurisdiction obtained by serving Borrower at the address stated on the first (1st) page hereof.

17. <u>Changes in Writing</u>

This Note may not be changed, waived, or terminated except in a writing signed by the party against whom enforcement of the change, waiver, or termination is sought.

EXECUTED under seal as of the date first above written.

WITNESS:

_____               _____
                                             David R. Rostoff

f:\users\brianp\ust.tan\doc\drostoff.agr
2052.16

11





MIRICK O'CONNELL
ATTORNEYS AT LAW
MIRICK, O'CONNELL, DEMALLIE & LOUGEE, LLP

April 24, 2003

## NOTIFICATION OF PROPOSAL TO
## ACCEPT COLLATERAL IN STRICT FORECLOSURE

**CERTIFIED MAIL, RETURN
RECEIPT REQUESTED AND
FIRST CLASS MAIL**

Mr. David Rostoff
1500 S. Ocean Boulevard
Unit 403S
Boca Raton, FL 33432-8523

Re:   Limited Partnership Interests in Tanglewood Limited Partnership

Dear Mr. Rostoff:

I serve as counsel to Citizens Bank of Massachusetts (the "Bank"). The Bank is the successor in interest to the secured position you pledged in the above referenced collateral. You are and remain in default under the obligation secured by a Security Agreement and Assignment of Partnership Interest dated May 24, 1989, entered with USTrust, which, among other things, granted the Bank a collateral interest in your 6.4% share in the Tanglewood Limited Partnership (the "Collateral"). The outstanding balance due on the debt so secured as of December 31, 2002, was $195,699.01.

The Bank's security interest in the Collateral was modified by agreement dated February 24, 1995, which provided for the Bank's release of the Tanglewood Limited Partnership shares, subject to the Bank's common law rights of rescission, provided further that there would be no rescission of the release thereunder "due solely to a default under the Deficiency Note by (you)." Here, not only have you defaulted upon the referenced deficiency note, reinstating the May 24, 1989 obligation, but your relatively contemporaneous transfers of assets to your spouse, including but not limited to your holdings in the Hickory Ridge Limited Partnership rendered you insolvent and essentially abrogated the value of the deficiency note and the consideration intended to support the contemplated release of the Collateral. See United States v. Rostoff, 966 F. Supp. 1275 (D. Mass. 1997). These events establish grounds for rescission of the Bank's prior release of the Collateral. As you know, the Bank has since



WESTBOROUGH, MA 01581-3941
508-898-1501 • FAX 508-898-1502

100 FRONT STREET
WORCESTER, MA 01608-1477
508-791-8500 • FAX 508-791-8502
www.MirickOConnell.com

BOSTON, MA 02110-1261
617-612417 • FAX 617-261-2418

{H:\PA\Lit\12874\37053\A0624974.DOC}

MIRICK O'CONNELL

Mr. David Rostoff
April 24, 2003
Page 2

continued to perfect its secured interest through timely notices to continue its security interest in the Collateral through the present.

The Bank hereby rescinds its release of the Collateral. All distributions payable thereunder shall hereafter be made to the Bank in care of the undersigned.

Given the apparent discharge of this debt through your recent bankruptcy and pursuant to Massachusetts General Law, Chapter 106, §§9-620 - 622, the Bank shall accept the Collateral in satisfaction of the balance and all amounts due under the obligation secured by the Security Agreement and Assignment of Partnership Interest as subsequently modified.

If you have any objection to the Secured Party's proposal to accept the Collateral in satisfaction of the balance due, you must send a signed, written statement of your objection within twenty (20) days from the date of this letter. If no timely written objection is received, you will be deemed to have consented to this proposal and will have no further right to object, and the Bank will retain the Collateral in full satisfaction of the outstanding balance.

Very truly yours,

Robert L. Hamer

RLH:sd

cc:   KHR Properties, Inc.
          c/o Ms. Harriett Rostoff its
          Registered Agent
      Patriot Indiana Corp.
          c/o Ms. Harriett Rostoff its
          Registered Agent
      William H. Sheehan, III, Esq.

bcc:  David E. Brown, Vice President
      Tom E. Zoller